AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
| JAFET SUJO A/K/A JAFET ELIAS SUJO-MULLER | ) Case No. 3:25-mj-1099-LLL |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __02-17-2023 and 9-5-2023__ in the county of __Duval__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1546(a) | Knowingly Possessing and Using a Forged, Counterfeited, Altered, or Falsely Made Documents |

This criminal complaint is based on these facts:

See Affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

SA Phillip M. Reynolds - ICE
Printed name and title

Sworn to before me and signed in my presence.

Date: February 21, 2025

_____
Judge's signature

City and state: Jacksonville, FL    Laura Lothman Lambert - US Magistrate Judge
Printed name and title

## CRIMINAL COMPLAINT AFFIDAVIT

I, Phillip M. Reynolds, being a duly sworn and appointed Special Agent for the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"), hereby make the following statement in support of the attached criminal complaint.

### Agent Qualifications

I am a Special Agent of HSI, a division of ICE assigned to the Assistant Special Agent in Charge Jacksonville Office and have been so employed since August 2004. I attended and completed 22 weeks of training at the Federal Law Enforcement Training Center. I received training in the enforcement of immigration and customs laws. Before becoming a Special Agent, I graduated from the University of North Florida and currently hold a Bachelor of Arts in Criminal Justice. I have been the case agent on other cases involving individuals knowingly possessing and using a forged, counterfeited, altered, or falsely made identification documents, including social security cards and resident alien cards, knowing them to be forged, counterfeited, altered, or falsely made, in violation of Title 18, United States Code, Section 1546(a). Information in this affidavit was either told to me by other law enforcement officers or personally known to me.

### I-9 Investigation

1. On April 16, 2024, HSI began an I-9 inspection of McCurdy-Walden, Inc. ("McCurdy-Walden"), a commercial roofing company in Jacksonville, Florida. In 1986, Congress reformed U.S. immigration laws to preserve the tradition of legal

immigration while seeking to close the door to unlawful entry. The employer sanctions provisions, found in section 274A of the Immigration and Nationality Act (INA), were added by the Immigration Reform and Control Act of 1986 (IRCA). These provisions further changed with the passage of the Immigration Act of 1990 and the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996. In summary, the INA specifically authorizes officers of DHS and some other agencies to inspect Forms I-9, including any copies of employees' documents retained with the corresponding Form I-9. ICE is responsible for enforcing provisions of section 274A. The requirements of the inspection and possible fines that may result from I-9 violations are well published.

2. As part of HSI's inspection at McCurdy-Walden, HSI identified employees who had suspicious identification documents during the onboarding process and who did not appear to be authorized to work in the United States.

3. After identifying those employees, HSI provided a "Notice of Suspect Documents" and "Notice of Discrepancies" to McCurdy-Walden dated February 3, 2025, and February 12, 2025. The Notices identified specific employees who did not appear to be authorized to work in the United States. After receiving the Notices, it was incumbent on McCurdy-Walden as the employer to ensure the employment eligibility of those identified in the Notice. Among others, two employees were identified: Jafet SUJO a\k\a Jafet Elias SUJO-MULLER, and Juner PEREZ a\k\a Juner MAXWELL-PEREZ.

2

4. During the I-9 investigation, HSI received copies of U.S. Citizenship and Immigration Services Form I-9s that were submitted by McCurdy-Walden for its employees, including SUJO-MULLER and MAXWELL-PEREZ.

5. A Form I-9 is titled "Employment Eligibility Verification" and is used to determine employment eligibility of employees. Employers are mandated to have employees complete a Form I-9 at the time of hiring and to have an authorized representative sign it too. Employers must maintain the Form I-9s for their employees working in the United States. The content on a Form I-9, including attachments provided by an employee, is attested by the employee as true and accurate under penalty of perjury and federal law relating to false statements and use of false documents in connection with the completion of the form.

### Form I-9s for SUJO-MULLER

6. HSI received three Form I-9s from McCurdy-Walden for its employee, Jafet Elias SUJO-MULLER. The Form I-9s for him were dated February 17, 2023, September 5, 2023, and May 7, 2024. HSI also received documents related to SUJO-MULLER's payments for the hours he worked at McCurdy-Walden.

7. The Form I-9 dated February 17, 2023, identified a social security number ending in 8743 and a Texas Identification Card for SUJO-MULLER. The employer's authorized representative (Person 1) signed the Form I-9 on February 25, 2023. In doing so, Person 1 attested that the documents were presented by SUJO-MULLER, including the social security card and a Texas Identification Card attached to the Form I-9.

3

8. The Form I-9 dated September 5, 2023, again identified a social security number ending in 8743 for SUJO-MULLER. A different authorized representative of the employer (Person 2) signed the Form I-9 on September 11, 2023, attesting the documents were presented by SUJO-MULLER.

9. The Form I-9 dated May 7, 2024, identified a different social security number ending in 0465 for SUJO-MULLER and listed him as a Legal Permanent Resident (which he was not). I queried SUJO-MULLER in immigration databases and determined that SUJO-MULLER was not a Legal Permanent Resident. Person 1 signed the Form I-9 on May 9, 2024, which attested that SUJO-MULLER presented a work authorization card and a social security card ending in 0465. Copies of each card were attached to the Form I-9. Notably, the work authorization and social security card ending in 0465 were issued by the United States to SUJO-MULLER. Thus, these were not fraudulent documents presented by SUJO-MULLER.

### Form I-9s for MAXWELL-PEREZ

10. HSI received two Form I-9s from McCurdy-Walden for its employee, Juner MAXWELL-PEREZ. The Form I-9s for him were dated February 21, 2023, and February 4, 2025. HSI also received documents related to MAXWELL-PEREZ's payments for the hours he worked at McCurdy-Walden.

11. The Form I-9 dated February 21, 2023, identified a social security number ending in 3219 for MAXWELL-PEREZ. The Form I-9 is incorrectly filled out and does not claim a certain eligibility to work in the United States. Person 1

4

signed the Form I-9 on February 21, 2023, attesting that MAXWELL-PEREZ presented a legal permanent resident card. Copies of the legal permanent resident card with an alien number ending in 228 and a social security card ending in 3219 for MAXWELL-PEREZ were attached to the Form I-9. Based on research in ICE records, the alien number ending in 228 is not assigned to MAXWELL-PEREZ. A copy of a different social security card for MAXWELL-PEREZ with a social security number ending in 5330 was attached to the Form I-9 and a handwritten note read "Recvd 4/15/24." The social security number ending 5330 was issued by the United States.

12. The Form I-9 dated February 4, 2025, identified the social security number ending in 5330 for MAXWELL-PEREZ. The Form I-9 identified MAXWELL-PEREZ as a legal permanent resident with the same alien number ending in 228. Person 1 signed the Form I-9 on February 4, 2025, attesting MAXWELL-PEREZ presented a legal permanent resident card and the copies of the legal permanent resident card and the social security card ending attached to the Form I-9. Again, the alien number ending in 228 is not assigned to MAXWELL PEREZ.

### Employer Interview

13. On February 20, 2025, I met with Person 1 and another representative of the employer (Person 3) at McCurdy-Walden in Jacksonville, Florida. During the interview, the Form I-9s were reviewed for both SUJO-MULLER and MAXWELL-

PEREZ. Person 1 said that both employees provided documents to a supervisor, who in turn, would copy them and present the copies to Person 1.

### SUJO-MULLER Detention and Interview

14. After the February 20, 2025 interview at McCurdy-Walden, with information gained from the employer indicating SUJO-MULLER had presented a false social security card and Texas identification card, another HSI Special Agent met with SUJO-MULLER near a roofing repair job in Jacksonville Beach, Florida. Based on the investigation thus far revealing that SUJO-MULLER, an alien and citizen of Nicaragua, had presented false identification documents, the agent detained SUJO-MULLER and transported him to the HSI Jacksonville Office.

15. At the office, I advised SUJO-MULLER of his *Miranda* rights, which he then waived. I then interviewed SUJO-MULLER using interpretation by Lionbridge, an ICE contracted service. SUJO-MULLER indicated he was aware of what was happening, was not under the influence of drugs and had attended four years of "University." SUJO-MULLER said he entered the United States and received immigration documents at the time of his illegal entry in 2022. I queried SUJO-MULLER in ICE databases and learned he was encountered by U.S. Customs and Border Protection in September 2022 and was provided a Notice to Appear in Immigration Court with an alien number ending in 928. That hearing is pending currently. Records also indicate U.S. Citizenship and Immigration Services received an application for an employment authorization card while awaiting an immigration court hearing on January 22, 2024, and it was approved soon after.

16. SUJO-MULLER said he presented a fake social security card and a Texas identification card to a secretary at McCurdy-Walden. SUJO-MULLER said he bought the cards for $350 from someone, whom he believed to be connected to "immigration." SUJO-MULLER indicated he bought the cards in November 2022. SUJO-MULLER claimed he did not know the cards were illegal until he went to see an attorney in 2023 and was informed his documents were fake, at which time he applied for a certain immigration relief from deportation. SUJO-MULLER claimed to have also used the fake documents to work at LCS Staffing in Jacksonville, Florida from December 2022 until February 2023. I asked SUJO-MULLER. as a man with his level of higher education, whether he thought it was normal for a private person to take three hundred and fifty dollars and give him documents, to which SUJO-MULLER responded "No." I then asked SUJO-MULLER if he knew the documents were false and he replied that he did not know and that his attorney was the first to make him aware of the documents being false.

### MAXWELL-PEREZ Detention and Interview

17. After the February 20, 2025 interview at McCurdy-Walden, I received permission to enter the business and contacted MAXWELL-PEREZ. Based on the investigation thus far revealing that MAXWELL-PEREZ had presented false identification documents, including a social security card and legal permanent resident card, I detained MAXWELL-PEREZ and transported him to the HSI Jacksonville Office.

18. At the office, I advised MAXWELL-PEREZ of his *Miranda* rights, which he waived. I then interviewed MAXWELL-PEREZ using interpretation by a Deportation Officer. MAXWELL-PEREZ said he entered the United States and received immigration documents with an alien number. MAXWELL-PEREZ said he went to Virgina and attempted to work for a "packing company." MAXWELL-PEREZ said he paid approximately $200 for a fake social security card and a legal permanent resident card. MAXWELL-PEREZ said that his employer at the packing company then fired him and said the documents were fake. MAXWELL-PEREZ admitted he used the same documents to work at McCurdy-Walden in Jacksonville, Florida. MAXWELL-PEREZ reviewed the Form I-9s from McCurdy-Walden and admitted he signed them.

### Conclusion

19. I believe there is probable cause to establish that SUJO-MULLER and MAXWELL-PEREZ each presented false documents to McCurdy-Walden to secure employment within the United States. SUJO-MULLER presented a false social security card and a Texas identification card. MAXWELL-PEREZ presented a false social security card and legal permanent resident card. Based on my training and experience, I understand that using false social security cards, identification cards, and legal permanent resident cards, as evidence of an authorized stay or employment in the United States, is a violation of Title 18, United States Code, Section 1546(a).

20. Therefore, based on the foregoing facts, I believe there is probable cause to establish that Juner MAXWELL-PEREZ and Jafet SUJO-MULLER each

8

knowingly possessed and used a forged, counterfeited, altered, or falsely made documents, specifically knowing them to be forged, counterfeited, altered, or falsely made, in violation of Title 18, United States Code, Section 1546(a).

_____
Phillip M. Reynolds, Special Agent
U.S. Immigration and Customs Enforcement
Jacksonville, Florida

Sworn to and subscribed before me this 21 day of February 2025.

_____
LAURA LOTHMAN LAMBERT
United States Magistrate Judge

9